1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA, et al.,

               Petitioners,

    v.

ALLAN D. TERVORT,

               Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)

1:07-cv-01295-OWW-SMS

CERTIFICATION OF FACTS CONCERNING
PETITION RE: CONTEMPT OF ORDER
FILED JANUARY 11, 2008 (DOCS. 27,
28, 30)

ORDER SETTING THE MATTER FOR
HEARING AND JUDGMENT OF CONTEMPT
BEFORE THE DISTRICT JUDGE
PURSUANT TO  28 U.S.C. §
636(e)(6)(B)

**Date: March 9, 2009**
**Time: 10:00 a.m.**
**Judge: Oliver W. Wanger**
**Courtroom: 3**

Petitioners are proceeding with a civil action in this
Court. The matter has been referred to the Magistrate Judge
pursuant to 28 U.S.C. § 636(b) and Local Rules 72-302(c)(9) and
72-303.

Pending before the Court is the petition of Petitioners
United States of America and Mike Goode, Revenue Agent of the
Internal Revenue Service (IRS), filed on July 2, 3, and 22, 2008,
regarding alleged contempt by Respondent Allan D. Tervort of the
Court's order dated January 11, 2008. In the order of January 11,
2008, the Court directed Respondent to appear personally in
obedience to the summons. (Order at 2.) The summons directed

1

1 Petitioner to appear before the revenue officer to provide

2 testimony and to bring books, records, papers, and other data

3 relating to his investigation of Respondent's income tax

4 liability for tax years ending in 2001 through 2004, and a

5 penalty concerning tax year ending December 31, 2003. (Decl. of

6 Goode, Doc. 1-3 p. 2, Ex. A.)

7      Petitioners requested that the Magistrate Judge hold a

8 hearing and certify the facts of the contempt to the District

9 Judge and set the matter before the District Judge for hearing

10 and judgment pursuant to 28 U.S.C. § 636(e)(6)(B).

11      On July 22, 2008, the Court issued an order to Respondent to

12 show cause why, for his failure to comply with the Court's order,

13 he should not be held in civil contempt of this Court, be

14 incarcerated until he complies with the order, and be ordered to

15 pay a daily fine until he complies with the order along with

16 compensatory fines for the resources the government has spent

17 issuing and enforcing the summons. (Doc. 30.) The OSC was served

18 on the Respondent by mail on July 22, 2008. Respondent filed a

19 response on September 23, 2008, along with the declarations of

20 Alan Tervort and Matthew Mark. Petitioner served and filed a

21 reply on October 7, 2008.

22      The hearing on the order to show cause was held on November

23 7, 2008. Stephanie Hamilton Borchers appeared on behalf of the

24 Petitioner, along with Revenue Agent Mike Goode. Respondent Allan

25 Tervort appeared personally at the hearing. The parties were

26 given an opportunity to file supplemental briefs, and the

27 Petitioner filed a supplemental brief on November 21, 2008;

28 Respondent filed on December 9, 2008, a supplemental brief that

1  was due no later than December 5, 2008. The brief was untimely

2  and is therefore DISREGARDED.

3       I. Background

4       On January 11, 2008, the Court adopted the undersigned

5  Magistrate Judge's findings and recommendations to grant the

6  petition of Petitioners United States of America and Revenue

7  Officer Mike Goode to enforce an IRS summons. (Doc. 25). The

8  district court's order specifically provided the following:

9       Respondent shall personally appear in obedience
        to the IRS summons on February 21, 2008, at 10:00
10      a.m., at the IRS office located at 4825 Coffee
        Road, Bakersfield, CA, 93308. (Emphasis added.)
11
   (Order p. 2.)
12
        The summons was described in the declaration of Petitioner
13
   Goode submitted in support of the petition to enforce the
14
   summons. (Doc. 1-3, p. 2.) Further, a copy of it was attached to
15
   Petitioner Goode's declaration, (Doc. 1-3, Ex. A). The summons
16
   stated that it was for periods described as follows:
17
        Form 1040 for the calendar periods ending December
18      31, 2001, December 31, 2002, December 31, 2003, December
        31, 2004 and December 31, 2005 and Civil Penalty
19      for the quarterly period ending December 31, 2003.

20 (Doc. 1-3, Ex. A, p. 5.) The summons directed the following:

21      You are hereby summoned and required to appear before
        MIKE GOODE, an Internal Revenue Service (IRS) officer,
22      and/or his or her designee, to give testimony and to
        bring for examination the following information related
23      to the collection of the tax liability of the person
        identified above for the periods shown: Form 1040 for
24      the calendar periods ending December 31, 2001, December
        31, 2002, December 31, 2003, December 31, 2004 and
25      December 31, 2005 and Civil Penalty for the quarterly
        period ending December 31, 2003
26
        All documents and records you possess or control
27      regarding assets, liabilities, or accounts held in
        the taxpayer's name or for the taxpayer's benefit
28      which the taxpayer wholly or partially owns, or

                                3

1
2
3

           in which the taxpayer has a security interest. These
           records and documents include but are not limited to:
           all bank statements, checkbooks, canceled checks, saving
           account passbooks, records or certificates of deposit
           for the period:

4

               From <u>06/30/2006</u> To <u>01/20/2007</u>

5
6
7

           Also include all current vehicle registration
           certificates, deeds or contracts regarding real
           property, stocks and bonds, accounts, notes and
           judgments receivable, and all life or health insurance
           policies.

8
9
10

           IRS will use this information to prepare a Collection
           Information Statement. We have attached a blank statement
           to guide you in producing the necessary documents and
           records.

11

(<u>Id.</u>)

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

     In support of the request for issuance of an order to show

cause, Petitioners served and filed on July 2, 2008, the

declaration of Revenue Officer Goode (Doc. 27-2), in which

Officer Goode stated that in connection with Respondent's tax

liabilities for years ending December 31, 2001 through December

13, 2004, he had issued the summons; the summons had been

delivered to Respondent; Respondent had appeared on February 21,

2008, as summoned; however, Respondent refused to produce any

documents or records as had been demanded in the summons, and he

refused to answer questions propounded by Officer Goode regarding

where Respondent worked and banked, and Respondent's address.

(Goode Decl., p. 2.) Goode stated that Respondent stated that his

house in Rosamond was vacant and that he was living with

different friends, and he claimed that he had no current offers

on the sale of this home. (Decl. of Goode dated June 27, 2008, ¶

4.) Further, Goode declared that Respondent's failure to comply

with the order continues to the present. (<u>Id.</u> at p. 2.)

4

1

2      Respondent's declaration submitted in response to the

3  petition is not declared to be true under penalty of perjury;

4  rather, it is declared to be "true and correct to the best of my

5  recollection." (Doc. 36, p. 2.)

6      Respondent Tervort asserts in his declaration that he fully

7  complied with the order. (Doc. 36.) He declares that he appeared,

8  brought unspecified "all related documents" on February 21, 2008,

9  and when asked to produce the documents, he asked if they could

10  be used against him in a court of law and if he was required by

11  law to turn over information that might be used against him.

12  Officer Goode said it was possible but highly unlikely.

13  Respondent asked if since it was possible, he was required by law

14  to turn over the documents; Goode stated he did not know but that

15  the subpoena required the documents to be turned over. Respondent

16  said that he needed to know if he was required by law to turn

17  over the documents before he would turn them over; he did not

18  turn over the documents.

19      Respondent also states that when asked if he had a bank

20  account, he asked the same question about that information being

21  used against him. Respondent asserts that he answered Goode's

22  question about any offers on a house at 6275 Holiday Avenue,

23  which Respondent states that he does not own; Respondent said he

24  did not know of any offers. Respondent alleges that when asked

25  where he was living, he told Goode he was living with friends and

26  relatives and did not have a permanent address at the time. When

27  asked where he was currently employed, Respondent asked if the

28  information could be used against him in a court of law. When

1  Goode then stated that the interview was a waste of time and that

2  he was going to let his lawyers know that Respondent had failed

3  to comply, Respondent said he was not refusing to comply, but he

4  needed to know if he was required by law to give the information

5  that could be used against him. Id.

6      A purported declaration with an identical jurat was

7  submitted by Matthew Mark, a friend of Respondent who was present

8  on February 21, 2008, when Respondent appeared before Goode.

9  Mark's declaration confirms the substance of Respondent's

10  declaration.

11      II. Jurisdiction

12      The Court has subject matter jurisdiction pursuant to 26

13  U.S.C. §§ 7402 (a)-(b), 7604(a), and 28 U.S.C. §§ 1340, 1345. The

14  Court has the inherent power to impose sanctions for contempt in

15  order to provide a fair, effective, and orderly judicial process.

16  See, United States v. Asay, 614 F.2d 655, 658-59 (9th Cir. 1980).

17      III. Legal Standards

18          A. Participation by a Magistrate Judge

19      Title 28 U.S.C. § 636(e)(6) provides:

20      (6) Certification of other contempts to the
        district court.--Upon the commission of any such act–
21          (A) in any case in which a United States
        magistrate judge presides with the consent of
22      the parties under subsection (c) of this section,
        or in any misdemeanor case proceeding before a
23      magistrate judge under section 3401 of title 18,
        that may, in the opinion of the magistrate judge,
24      constitute a serious criminal contempt punishable
        by penalties exceeding those set forth in paragraph
25      (5) of this subsection, or
            (B) in any other case or proceeding under
26      subsection (a) or (b) of this section, or any other
        statute, where–
27              (i) the act committed in the magistrate
        judge's presence may, in the opinion of the magistrate
28      judge, constitute a serious criminal contempt punishable

1

by penalties exceeding those set forth in paragraph
(5) of this subsection,

2

    (ii) the act that constitutes a criminal
contempt occurs outside the presence of the magistrate

3

judge, or

    (iii) the act constitutes a civil contempt,

4

the magistrate judge shall forthwith certify the facts
to a district judge and may serve or cause to be served,

5

upon any person whose behavior is brought into
question under this paragraph, an order requiring

6

such person to appear before a district judge upon
a day certain to show cause why that person should

7

not be adjudged in contempt by reason of the facts
so certified. The district judge shall thereupon hear

8

the evidence as to the act or conduct complained of
and, if it is such as to warrant punishment, punish

9

such person in the same manner and to the same extent
as for a contempt committed before a district judge.

10

B. Civil Contempt

11

Petitioners seek a judgment of civil contempt. The civil

12

nature of the proceeding is based on the character and purpose of

13

the relief sought. Where the relief sought involves not punitive

14

or criminal contempt undertaken to punish or vindicate the Court,

15

but rather compulsory and compensatory sanctions, including

16

conditional confinement, employed to compel the Respondent to

17

comply or to compensate the Petitioners for the refusal to

18

comply, then the proceeding is for civil contempt. See, United

19

States v. Asay, 614 F.2d 655, 659 (9th Cir. 1980); Shillitani v.

20

United States, 384 U.S. 364, 369-70 (1966).

21

The elements required to be shown in order to adjudge one in

22

civil contempt include a specific and definite court order and a

23

failure to comply with the order, which consists of not taking

24

all the reasonable steps within one's power to insure compliance

25

with the order. McComb v. Jacksonville Paper Co., 336 U.S. 187,

26

191 (1949); Balla v. Idaho State Bd. of Corrections, 869 F.2d

27

461, 465 (9th Cir. 1989). Wilfulness is not a required element of

28

1 civil contempt, and the absence of wilfulness does not relieve

2 one from a civil contempt. McComb, 336 U.S. at 191; United States

3 v. Asay, 614 F.2d at 661. A petitioner for contempt has the

4 burden of proving a prima facie case by clear and convincing

5 proof, which is higher than a preponderance of the evidence but

6 less than beyond a reasonable doubt. Balla v. Idaho State Bd. of

7 Corrections, 869 F.2d 461, 466 (9th Cir. 1989).

8     Legal defenses to civil contempt include substantial

9 compliance with the order, defined as having taken all reasonable

10 steps to comply with the court order. Balla, 869 F.2d at 466.

11 However, at the present stage of the proceedings, a respondent

12 may not assert error in the order with which he failed to comply.

13 United States v. Rylander, 460 U.S. 752, 756-57 (1983). A

14 contempt proceeding does not open to reconsideration the legal or

15 factual basis of the order alleged to have been disobeyed; it

16 does not permit a retrial of the original controversy or an

17 assertion of lack of possession at the time the order was made.

18 Id. This is because the initial proceeding to enforce the summons

19 was an adversary proceeding in which the defendant might contest

20 the summons on any appropriate ground, including lack of

21 possession or control; thus, such issues may not be raised for

22 the first time in a contempt proceeding. Rylander, 460 U.S. at

23 757.

24     A respondent may defend against contempt on the ground that

25 he presently lacks possession or control, but the respondent

26 bears the burden of production. Id. at 757-58, 760-61.

27     C. Fifth Amendment Privilege against Self-Incrimination

28     The Fifth Amendment provides that no person shall be

8

1  compelled in any criminal case to be a witness against himself.

2  The Fifth Amendment applies when the accused is compelled to make

3  a testimonial communication that is incriminating. Fisher v.

4  United States, 425 U.S. 391, 408 (1976). The privilege protects

5  against any disclosures that the witness reasonably believes

6  could be used in a criminal prosecution or could lead to other

7  evidence that might be so used. Kastigar v. United States, 406

8  U.S. 441, 444-45 (1972). The claimant of the privilege has the

9  burden to submit sufficient evidence to make it evident, in view

10 of the implications of the question in the setting in which it is

11 asked and in light of the peculiarities of the case, that a

12 responsive answer to a question might be dangerous because

13 injurious disclosure could result. Hoffman v. United States, 341

14 U.S. 479, 486-87 (1951); United States v. Drollinger, 80 F.3d

15 389, 392 (9th Cir. 1996). It must be shown that the testimony or

16 matter would support a conviction under a federal criminal

17 statute or furnish a link in the chain of evidence needed to

18 prosecute a claimant for a federal crime. Hoffman v. United

19 States, 341 U.S. at 486. The privilege is validly invoked only

20 where there are substantial hazards of self-incrimination that

21 are real and appreciable, not merely imaginary and unsubstantial.

22 United States v. Brown, 918 F.2d 82, 84 (9th Cir. 1990). It has

23 been held that a reasonable belief that information concerning

24 income or assets might be used to establish criminal failure to

25 file a tax return can be within the privilege. See, United States

26 v. Bodwell, 66 F.3d 1000, 1001 (9th Cir. 1995) (citing United

27 States v. Rendahl, 746 F.2d 553, 555-56 (9th Cir. 1984)

28 [concluding that a risk of incrimination had been shown by

9

1 taxpayers who were asked to testify in connection with an

2 investigation regarding a third party's tax liability but who

3 also showed that questions asked them would require answers

4 concerning income that could be used to help prove that they had

5 received sufficient income to be required to file a return]).

6    However, it is established that a person claiming the

7 privilege must present himself for questioning with the records

8 and must specifically claim the privilege with respect to each

9 question and each record. United States v. Drollinger, 80 F.3d

10 389, 392 (9th Cir. 1996); see, United States v. Brown, 918 F.2d

11 82, 84 (9th Cir. 1990).

12    A Fifth Amendment privilege generally cannot be invoked as a

13 means to justify the mere refusal to produce documents in a

14 summons enforcement proceeding. See, United States v. Rylander,

15 460 U.S. 752, 757-58 (1983) (holding it was not unfair to put the

16 burden of showing impossibility of compliance on a taxpayer who

17 claimed a privilege against self-incrimination with respect to

18 answering questions).

19    Further, it is established that to be privileged under the

20 Fifth Amendment, an accused's communication must be testimonial,

21 i.e., it must itself explicitly or implicitly relate a factual

22 assertion or disclose information. Doe v. United States, 487 U.S.

23 201, 209-10 (1988). Thus, the privilege typically does not

24 protect the production of documents or records voluntarily

25 prepared, even if the contents are incriminatory. United States

26 v. Doe, 465 U.S. 605, 610 (1984) (noting that a subpoena that

27 demands production of documents generally does not compel oral

28 testimony or compel the restating, repetition of, or affirmance

10

1  of the truth of the contents of documents sought); <u>Fisher v.</u>

2  <u>United States</u>, 425 U.S. 391, 408-13 (1976).

3       IV. <u>Analysis</u>

4       Here, the Court finds that the order of January 11, 2008, in

5  which the Court compelled compliance with the summons, was in

6  existence and was specific. The terms of the summons were not in

7  dispute.

8       With respect to the purported declarations submitted by

9  Respondent, the qualification of truth "to the best of my

10 recollection" in the declarations is not in compliance with 28

11 U.S.C. § 1746, which requires that a declaration be subscribed as

12 true under penalty of perjury, and be executed substantially in

13 the statutory form, which in turn requires a declaration "under

14 penalty of perjury that the foregoing is true and correct." 28

15 U.S.C. § 1746. Although a lack of swearing is not a fatal defect,

16 the declaration must be made under penalty of perjury and must be

17 attested to be true. <u>Cobell v. Norton</u>, 310 F.Supp.2d 77, 84

18 (D.D.C. 2004) (statement of truth based on "knowledge,

19 information, and belief" insufficient); <u>Kersting v. United</u>

20 <u>States</u>, 865 F.Supp. 669, 776-77 (D. Hawaii 1994) (necessary

21 elements are that the unsworn declaration contains the phrase

22 "under penalty of perjury" and states that the document is true).

23      Here, the statement is only that it is true and correct as

24 far as Respondent recalls. The nature and extent of that

25 qualification is uncertain and is subject to being clarified only

26 by Respondent. The Court concludes that the declarations

27 submitted by Respondent fail to comply with the requirements of §

28 1746.

1    However, even if the declarations were considered, then the
2    Court concludes that nevertheless, no issue of fact has been
3    presented to the Court concerning Respondent's compliance with
4    the summons.

5    Respondent admits that when he appeared before Agent Goode,
6    Respondent failed to turn over any of the documents after in turn
7    admitting that pertinent documents existed and were in his
8    possession at the time. Respondent's question concerning the
9    possibility of use of the documents against him in <u>any</u> court, and
10   apparently for any purpose or type of liability, was too broad to
11   constitute a specific invocation of the privilege against self-
12   incrimination with respect to prosecution in federal court. Use
13   of documents against one in any court of law includes the
14   possibility of use that would risk civil liability as well as
15   criminal liability. However, it is established that the privilege
16   may be invoked only to protect against compelled testimony that
17   could subject one to criminal liability, not merely civil
18   liability. <u>United States v. Balsys</u>, 524 U.S. 666, 671-72 (1998)
19   (not sufficient to raise a risk of being subjected to deportation
20   proceedings because such proceedings were civil in character).
21   Respondent thus never specifically invoked the Fifth Amendment
22   privilege.

23   Should the Court disagree with the Magistrate's findings, it
24   is noted that in any event, such a blanket invocation of the
25   privilege would have been insufficient. Further, the mere type of
26   documents requested is not sufficient to make out a claim of
27   privilege with respect to any document or class of documents. The
28   summons requested documents and records regarding assets,

1 liabilities, or accounts held in Respondent's name or for his

2 benefit and which he owned in whole or in part, or in which

3 Respondent had a security interest, including but not limited to

4 bank statements, checkbooks, canceled checks, savings account

5 passbooks, records or certificates of deposits, current vehicle

6 registration certificates, deeds or contracts concerning real

7 property, stocks and bonds, accounts, notes and judgments

8 receivable, and all life or health insurance policies. As

9 Petitioner notes, most of these documents are not of a type

10 created by the taxpayer, and thus it is not likely that any

11 testimonial evidence would be sought in the form of these

12 documents. See, Fisher v. United States, 425 U.S. 391, 409.

13 Therefore, although some incriminating assertions of fact or

14 belief might be contained in such documents, it appears likely

15 that production would not constitute testimonial compulsion

16 protected by the Fifth Amendment. United States v. Hubbell, 530

17 U.S. 27, 35-36 (2000) (production of documents containing

18 incriminating matter not violative of the Fifth Amendment because

19 creation of the documents was not compelled); Doe v. United

20 States, 487 US. 201, 206 (1988) (contents of foreign bank records

21 not privileged because the "statement" was that of another).

22     Further, there is no apparent testimonial value to any

23 admission of the existence of the requested records or of

24 Respondent's possession of those documents because it is common

25 knowledge that banks and financial institutions keep records and

26 send out statement, vehicle registration agencies issue

27 certificates of ownership and registration, insurance agencies

28 issue policies, etc. See, Kaggen v. IRS, 71 F.3d 1018, 1020 (2nd

1  Cir. 1995) (noting that the existence of such records is not

2  reasonably subject to dispute). Because the records were made or

3  issued by a third party, Respondent's act of production would not

4  amount to authentication. See, Fisher, 425 U.S. at 413.

5       Finally, here, Respondent appears to have admitted the

6  existence and identity of, and his possession of, the documents

7  requested because in his declaration, he states that he told

8  Goode that he had brought the requested documents in his

9  briefcase. (Decl. ¶ 2.) Thus, the act of production would not

10 appear to have any testimonial value in the present

11 circumstances.

12      With respect to the questions asked Respondent, the

13 Magistrate finds that Respondent's refusal to answer questions

14 until he was informed whether or not the answers could be used

15 against him in any court of law did not constitute a specific

16 invocation of the privilege. Respondent has not demonstrated a

17 reasonable belief that his testimony would support a conviction

18 under a federal criminal statute or furnish a link in the chain

19 of evidence needed to prosecute the claimant for a federal crime.

20 United States v. Rendahl, 746 F.2d 553, 555 (9th Cri. 1984).

21 Therefore, the claim of Fifth Amendment privilege has not been

22 made out.

23      V. Certification and Recommendation

24      Accordingly, the undersigned Magistrate Judge FINDS AND

25 CERTIFIES that a definite, specific order existed that required

26 Respondent to appear before the Petitioner Goode, answer

27 questions, and produce documents; and that Respondent, who was

28 subject to the order, appeared and brought all the requested

14

documents with him in responding to the summons, but he failed to a) answer questions propounded by the revenue agent concerning matters that were pertinent to enforcement of the summons and investigation of the aforementioned tax liabilities of Respondent; b) produce any of the documents; and c) do all that he could reasonably do to comply with the order.

The Magistrate Judge therefore FINDS AND CERTIFIES that pursuant to 28 U.S.C. § 636(e)(6)(B), it is appropriate for Respondent Allan Tervort to appear before a District Judge upon a day certain to show cause why Respondent should not be adjudged in contempt by reason of the facts so certified.

The undersigned Magistrate Judge therefore SETS THE MATTER BEFORE THE DISTRICT JUDGE FOR HEARING AND JUDGMENT pursuant to 28 U.S.C. § 636(e)(6)(B), AND DIRECTS SERVICE UPON RESPONDENT AN ORDER REQUIRING RESPONDENT TO APPEAR BEFORE DISTRICT JUDGE OLIVER W. WANGER ON March 9, 2009, AT 10:00 a.m., AND SHOW CAUSE why Respondent should not be adjudged in contempt by reason of the facts so certified.

IT IS SO ORDERED.

**Dated:   December 17, 2008**              **/s/ Sandra M. Snyder**
                                        UNITED STATES MAGISTRATE JUDGE